IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 25 CR 045 |
| v. | ) | |
| | ) | Hon. Heather K. McShain |
| JEFREY ESTRADA-PASTRANA | ) | |

## SUPPLEMENT TO MOTION TO MODIFY CONDITION 7(q)(i)(2) OF THE CONDITIONS OF PRETRIAL RELEASE, TO ADD A 3RD PARTY CUSTODIAN, AND CHANGE HOME ADDRESS

On February 18, 2025, this Court ordered that defendant's motion to modify bond conditions, Dkt. 18, defendant order an expedited transcript of the 1/29/25 detention hearing before Judge McShain. Dkt. 20. As such, **JEFREY ESTRADA-PASTRANA**, by the Federal Defender Program and its attorney **KATHLEEN LEON**, submits this supplement to his above titled motion with the transcript of the 1/29/2025 detention hearing attached. In support of his Motion to Modify Condition 7(q)(i)(2) of the Conditions of Pretrial Release, to Add a 3rd Party Custodian, and Change Home Address, Mr. Estrada-Pastrana directs the Court to page 26, lines 22-25 ("Employment also weighs in favor of release. This is someone who has had consistent employment for several years, who has been earning an income, supporting his family, his children. That weighs in support of release.") and page 30, lines 15-18 ("And I'm going to place him on location monitoring. But I want to make sure that he is able to continue to work. So I'm

putting him on the least restrictive location monitoring, and that's home

detention.")

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: _/s/ Kathleen Leon_
KATHLEEN LEON
Attorney for Jefrey Estrada-Pastrana

FEDERAL DEFENDER PROGRAM
55 E. Monroe, Suite 2800
Chicago, IL 60603
(312) 621 –8300

# EXHIBIT A

1   **TRANSCRIBED FROM DIGITAL RECORDING**

2                   IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4   UNITED STATES OF AMERICA,            ) Case No. 24 C 45
                                         )
5               Plaintiff,               )
                                         )
6               vs.                      )
                                         )
7   JEFRY ESTRADA-PASTRANA,              ) Chicago, Illinois
                                         ) January 29, 2025
8               Defendant.               ) 10:46 A.M.

9           TRANSCRIPT OF PROCEEDINGS – Detention Hearing
       BEFORE THE HONORABLE HEATHER K. McSHAIN, Magistrate Judge
10
    APPEARANCES:
11
    For the Government:       HON. MORRIS PASQUAL
12                            219 South Dearborn Street
                              Chicago, Illinois  60604
13                            BY:  MS. DIYA RATTAN

14  For the Defendant:        FEDERAL DEFENDER PROGRAM
                              55 East Monroe Street
15                            Suite 2800
                              Chicago, Illinois  60603
16                            BY:  MS. KATHLEEN LEON

17  ALSO PRESENT:             Ms. Tiffany Minarik
                              Pretrial Service Officer
18

19

20

21
                        PAMELA S. WARREN, CSR, RPR
22                   Official Court Reporter - Retired
                        23869 N. High Ridge Drive
23                    Lake Zurich, Illinois   60047
                             312.823.0001
24

25  NOTE:  Please notify of correct speaker identification.

1    (Proceedings held in open court:)

2         THE CLERK:  25 CR 45, USA versus Jefry Estrada-

3   Pastrana for detention hearing.

4         THE COURT:  Good morning.  Counsel, please state your

5   appearance for the record, beginning with government.

6         MS. RATTAN:  Diya Rattan the government.

7         THE COURT:  You are free to remain seated.  Thank you.

8         For the defendant, please.

9         MS. LEON:  Good morning, your Honor.  Kathleen Leon

10  from the Federal Defender Program behalf of Mr. Estrada-

11  Pastrana.

12        THE COURT:  Thank you.

13        And pretrial services are by phone, please.

14        MS. MINARIK:  Good morning.  Tiffany Minarik with

15  pretrial services.

16        THE COURT:  Thank you, Ms. Minarik.

17        And I apologize for keeping everyone waiting.  It has

18  just been a busy morning on duty.

19        Okay.  We're here for a detention hearing.  Ms. Leon,

20  are you ready to proceed?

21        MS. LEON:  Yes, Judge.

22        THE COURT:  Okay.  And is government ready to proceed

23  as well?

24        MS. RATTAN:  I am, your Honor.

25        THE COURT:  Okay.  Thank you.

1      I have the pretrial services report.  Thank you so
2  much, Ms. Minarik, for preparing it.
3      Ms. Minarik, can I just clarify one entry with you,
4  please.  It is on -- it relates to the criminal history, and it
5  is on page 6 of the pretrial services report.  If you have it
6  handy.
7      MS. MINARIK:  Yes, your Honor.
8      THE COURT:  Okay.  So there -- the next to last entry
9  on the pretrial services report relating to case 23 CR 130661,
10  a felony theft deception and then felony forgery issue deliver
11  document.  The first entry to the far right, that is this
12  petition for revocation filed.  I am confused as to why that's
13  the first entry.  Was he -- was Mr. Estrada-Pastrana on bond,
14  like arrested 11/9/23 on bond, and then the petition for
15  revocation got filed?
16      MS. MINARIK:  Yes, your Honor.  On 11/10/23, the Cook
17  County docket reflects that he was released on bond, including
18  pretrial supervision.
19      THE COURT:  Okay.
20      MS. MINARIK:  And then the following entry after his
21  release on 11/10/23 is the petition for revocation.
22      THE COURT:  Okay.  And then the next sort of the date
23  that in that far right column, the 11/7/2024, then the motion
24  was denied and then Mr. Estrada-Pastrana then was -- was that
25  on bond and had -- is there any other notation as far as

1    appearance in court then on that case?

2           MS. MINARIK:  No, your Honor.  The only -- the next

3    docket entry just states that his next court date is on

4    January 29th, 2025.

5           THE COURT:  Okay.  Got it.  Okay.  Thank you for

6    clarifying that.

7           So we're ready to proceed then.  This is not a

8    presumption case, so my intention is to have the government

9    argue first given that it's the government's burden on this

10   motion.

11          And then I'll hear from you, Ms. Leon.

12          And I will give the government last word to respond or

13   reply to anything that the defense raises.

14          So you're welcome to begin, Ms. Rattan.

15          MS. RATTAN:  Thank you, your Honor.

16          The government agrees with the pretrial services

17   recommendation in this matter and asks that the Court find

18   under 3142(e)(1) that no conditions can be fashioned to

19   reasonably assure the defendant's presence for further

20   proceedings in this matter.

21          Accordingly, we're seeking detention under the risk of

22   nonappearance.  And our position is based on a handful of

23   fact- -- of the 3142(g) factors that we believe weigh in favor

24   of detention.

25          The nature and circumstances of the offense charge

1  would weigh in favor of detention.  This is a continuing based

2  offense -- a continuing offense based on seven prior removal

3  proceedings.

4        I acknowledge that the pretrial services report

5  indicates that the defendant has been removed three times from

6  this country.  However, my review of the defendant's A-File,

7  and in speaking to a deportation officer to understand my

8  interpretation of the A-File, indicates that the defendant has

9  been removed a total of seven times.  That includes in 2007,

10  2008, 2010, and 2012, 2015, 2016, and 2021.

11        Importantly, the majority of these removals occurred

12  after the defendant was subject to unrelated criminal

13  proceedings, which is similar to what's occurring in --

14  currently in this case.  And these unrelated criminal

15  proceedings range from traffic offenses to serious felonies,

16  such as robbery and fleeing.

17        Furthermore, the defendant has a previous conviction

18  for a similarly charged crime of unlawful reentry after

19  deportation.  He was sentenced to 16 months in prison in the

20  district court of the Southern District of Texas.

21        The stakes aren't -- in this case aren't potentially a

22  longer sentence of the -- potentially longer than 16 months.

23  But I anticipate, based on the information provided in the

24  pretrial services report, there is consideration on the

25  defendant's behalf regarding his family and economic financial

1  situation.  And although this is a status offense versus a
2  violent offense, this matter and the potential consequences are
3  serious for him.

4        The defendant's history and characteristics also weigh
5  in favor of detention in this matter.  His past conduct
6  indicates that the defendant has a history of not following
7  court orders.  And this begins with some of his earliest
8  history and contact with the judicial system in this country.

9        A review of the defendant's A-File indicates that he
10  was granted initially in 2006 voluntary removal and indicated
11  to the Court that he would voluntarily remove himself from the
12  United States.  Unfortunately, the Court, the immigration court
13  had to undertake additional proceedings and findings and issue
14  an order of removal after he overstayed.  This resulted in his
15  first removal in 2007.

16        Since then there is no instance of applying for
17  permission to reenter, despite being advised of this multiple
18  times.  In full candor to the Court, I will indicate that the
19  A-File reflects two instances where the defendant did, after he
20  reentered the country, apply for asylum.  There were full
21  proceedings and hearings in those matters in 2012 and 2015.
22  These requests for asylum were unfounded, and he was removed in
23  both those instances.

24        The defendant's criminal history also reflects an
25  attempt -- attempts to evade detection from law enforcement,

1    which is concerning in regards to any sort of potential
2    pretrial supervision that would require communicating contacts
3    with law enforcement.
4           In April of 2012, he was charged with obstruction,
5    obstructing identification.  And in particular in this case, he
6    also failed to appear.  A warrant was issued, and he forfeited
7    bond.
8           In March of 2014, he picked up a case involving
9    aggregated fleeing.  He admitted to an immigration court
10   official that when he saw law enforcement trying to pull him
11   over in this case, he fled in car and then on foot to avoid
12   detection specifically because of his unlawful status.  And
13   according to the charges in that case, there was also property
14   damage that occurred during flight.
15          The record of court appearances and how the defendant
16   has done on supervision also indicates that there is no
17   combination of conditions that can reasonably assure the
18   defendant's appearance in further proceedings.  He has three
19   previous bond forfeitures in 2007, 2010, and 2012.  He violated
20   a conditional discharge sentence in 2008, and that ultimately
21   resulted in a sentence to jail.
22          And my review of both the criminal history and the
23   deportation history indicates that while he was sentenced to
24   probation in a case in 2010 and then parole in 2014 in the
25   second case, it appears that he actually remained in custody

1  pending immigration proceedings and was removed.  So it is

2  unclear whether or not he was -- actually completed supervision

3  without any violations in those cases.

4       Importantly, my understanding, based on the

5  conversation the Court had with pretrial services earlier

6  today, is that the defendant was on supervision, pretrial

7  supervision related to a felony forgery case when he

8  subsequently picked up this case and another traffic violation.

9       Once again, in full candor to the Court, that traffic

10  violation, at least reflected in the NCIC, appears to be nolle

11  pros.  So I'm not sure if that is still pending, at least in my

12  understanding of the NCIC.

13       However, it indicates that despite supervision, there

14  is a concern about whether or not the defendant will be able to

15  comply with court orders if out in the community.

16       Briefly, for the record, I would also just mention a

17  few additional 3142(g) factors.  The weight of evidence in this

18  case.  Obviously the defendant's presence here is irrefutable,

19  and there is forensic fingerprint analysis indicating that he

20  had been -- he has been previously removed on prior instances.

21       A combination of conditions, such as -- I believe a

22  family member, father or mother, being a good third-party

23  custodian wouldn't be appropriate in this case based on the

24  fact that the defendant doesn't live with this individual, he

25  lives with someone else.  I believe a long-term girlfriend.

1       My understanding is his father's status is also in a

2   questionable situation and may -- he may be subject to removal,

3   which would make it difficult, obviously, for him to ensure his

4   son's appearance in court.

5       Pretrial supervision isn't sufficient in this matter,

6   as previously indicated that he was on pretrial service

7   supervision in a state -- currently pending state offense.

8       And bond and monetary conditions would not be

9   sufficient based on the fact that there are three prior

10  judgments of bond forfeiture.

11      I would also argue that home monitoring is a passive

12  form of supervision.  And the defendant has shown that he will

13  actually take active measures to avoid apprehension, such as

14  fleeing from law enforcement.

15      So based on all of these factors, I would ask the

16  Court to find that the defendant -- there are no conditions

17  that can be fashioned to reasonably assure the defendant's

18  presence in this matter.

19      THE COURT:  Thank you.  Can I just review one thing

20  that you said or just make sure that I am tracking?  I think

21  you stated that he -- that Mr. Estrada-Pastrana has illegally

22  reentered seven times.  The affidavit -- the criminal complaint

23  affidavit at paragraph 6 has six dates.  Is there a date -- I

24  just want to make sure, is it six or seven?

25      MS. RATTAN:  There are seven prior removal

1 proceedings. And I apologize if this -- this was unclear. He

2 has been removed seven times prior. The re- -- I did not

3 count, obviously, the first time that he entered the United

4 States as a part of reentry because that was the first time

5 that he entered the United States.

6 THE COURT: Okay. So it is seven prior removal

7 proceedings, but then --

8 MS. RATTAN: Six reentries.

9 THE COURT: -- six reentries into the country

10 following. Okay.

11 MS. RATTAN: Yes.

12 THE COURT: And also, you referred to this as a

13 continuing offense. You know, one of the 3142(g) factors is

14 whether or not -- is whether or not someone is on some sort of,

15 you know, bond or probation at the time of the instant alleged

16 offense. How does that factor apply here when it is a

17 continuing offense such as this, when someone is here

18 illegally?

19 I mean, and then -- are you -- you mention that

20 factor. But are you applying it because he picked up these two

21 state cases while here illegally in this most recent time

22 frame?

23 MS. RATTAN: Yes. The time frame I was looking at is

24 basically from the time that he potentially reenters

25 unlawfully. It is a continuing offense. Obviously he -- we're

1    not clear on the specific date of reentry.  But with that, he

2    had two somewhat recent state offenses that he committed.  One

3    of them was on supervision.  There has been sufficient time to

4    either apply retroactively for permission to reenter or to

5    leave the country.  And that, at least in his A-File, is not

6    reflected.  So that's kind of how I am looking at this in terms

7    of timeline.

8           THE COURT:  Okay.  Thank you for that clarification.

9           Ms. Leon.

10          MS. LEON:  Sure.  Thank you, Judge.  I submit that

11   there are conditions or a combination of conditions that will

12   reasonably assure my client's appearance in court.  It is my

13   understanding that the government was moving for detention

14   based on serious risk of flight.  And serious risk of flight

15   under (f)(2)(A) is a great risk beyond average that the

16   defendant will intentionally and actively move outside of the

17   jurisdiction to avoid court proceedings or supervision.  And I

18   don't think the government has demonstrated that.  I think they

19   have demonstrated ordinary risk of flight.  But ordinary is not

20   good enough under (f)(2)(A).

21          I understand my client has a lengthy criminal history,

22   but it -- a lot of it is quite dated and a lot of it occurred

23   when he was very young.

24          I also understand he has some bond forfeiture

25   warrants.  But the plain -- the plain language of flight, as

1    some courts have defined it, is an intentional act by a

2    defendant to evade criminal prosecution.  And these bond

3    forfeitures were not as a result of intentional acts.

4         It is my understanding that in 2010 my client was

5    taken into ICE custody while he was paroled.  There is no

6    volitional act there.  It was not his decision to violate his

7    parole.  He was in ICE custody and then he was subsequently

8    removed from the United States at that point.

9         In addition, your Honor, the Court must inquire into

10   what occurred with these failure to appears because that must

11   also be a volitional act.  And he does have failure to appears,

12   but he does have an excuse for each failure to appear.  He was

13   quite young when some of them occurred.  He didn't have a

14   license and couldn't make it to court.  There were other times

15   where he had other proceedings pending at the same time and he

16   had to be at these other proceedings.

17        And I understand that because of this -- the nature of

18   this crime it means that, you know, he's committing --

19   allegedly committing two different crimes at the same time

20   because he's here illegally and also he has this new arrest for

21   something else.  But I think the fact that he keeps reentering

22   into the country cuts both ways.  Chicago is all he knows.

23   According to his mother, he was brought here when he was 11 or

24   12 years old.  His parents are here.  His children's here.  Any

25   family he knows is here, other than a grandmother he hasn't

1    seen since he was 11 years old who is 80, 90 something years

2    old in Honduras --

3            Honduras?

4            THE DEFENDANT:  Yes.

5            THE COURT:  -- I believe.

6            He -- he essentially has no ties to his birth country.

7    All of his ties are here in the United States.

8            And courts have noted that community ties anywhere in

9    the U.S. weighs against finding a serious risk of flight.  To

10   the extent that a defendant has community ties somewhere in

11   this country, the defendant is less likely to choose the path

12   of the fugitive than not appearing in court.

13           And I understand he has some cases where there was

14   flight from -- from law enforcement individuals.  However,

15   courts have also stated that avoiding being caught in the heat

16   of the moment is not the same as being inclined to jump bail.

17           The direct quote is, there is a difference between

18   someone being inclined to avoid being caught in the act and

19   someone once caught and brought before the Court being inclined

20   to jump bail.  Those are two different things.

21           And I think the 2023 -- I guess that was an arrest.

22   The 2023 case -- I'll say the 2023 theft deception case shows

23   that he -- he is willing to go to court.  He does go to court.

24   He's pending -- he is facing a pretty serious crime here.  I

25   don't know how much time it carries.  I don't really know the

1   state laws or how much time each charge carries.  But he is

2   still here.

3          It is my understanding that for the last year he has

4   been going to court and showing up in court -- and having

5   worked in state court, not here, but in Florida -- when you

6   don't show up, you are going to get a failure to appear.  They

7   don't care about the reason.  And so after that failure to

8   appear is entered and you come to court the next time, and

9   maybe they will quash it.  There is no failure to appears here.

10         And as far as the operating an uninsured motor

11  vehicle, it is my understanding that has been nolle pros'd as

12  well.

13         My client's most recent criminal history, again the

14  aggravated fleeing, avoiding being caught in the heat of the

15  moment -- he understands that he is not a U.S. Citizen.  It is

16  very different than going to court after you have been caught.

17         The rest of his most recent criminal history, other

18  than this theft deception, which he enjoys the presumption of

19  innocence for -- and from my understanding from the state PD is

20  taking to trial -- we have traffic offenses and those are

21  pretty low-level offenses.

22         I'm not -- I'm not arguing that because they are

23  low-level offenses that it is not serious and that he shouldn't

24  be following the law.  But he has gone to court every time.

25  There is -- there is, of course, no disposition noted.  But my

1    client has represented to me that he has gone to court every

2    single time he has been required to go to court, unless there

3    is some sort of transportation issue or miscommunication with

4    his attorney.

5         So, Judge, I do think -- his mother is here today.  I

6    think she would serve as a suitable third-party custodian.  I

7    think any risk of flight that is here is ordinary and mitigated

8    or can be mitigated by a set of conditions, including an ankle

9    monitor, home detention, home incarceration.

10        I would, of course, prefer the lower level because my

11   client does work.  He does take care of his family.  He has a

12   sister who suffers from scoliosis who just had a heart

13   operation who he helps his mother care for.

14        He cares for four children, all here in the United

15   States, U.S.-born children.  His girlfriend is here.  His long-

16   time girlfriend is here.

17        Again, Judge, everybody he knows, cares about, et

18   cetera, is here.  Every time he has allegedly reentered -- I

19   think it is proven -- reentered the United States, he has come

20   back here to Chicago, to the people he knows and loves, to the

21   only people he knows here in America.

22        So I just don't see a risk of flight here, a serious

23   risk of flight here.  He has nowhere to go.  He has nowhere to

24   go where he knows anybody or has any support.  All of his

25   support is here in Chicago.  Some of whom in the courtroom

1    today.

2           So I do think there are a combination of conditions.

3    The PTRA score states, you know, when not considering technical

4    violations, he has an 80 percent likelihood of success.

5    Unfortunately, when technical violations are considered by

6    PTRA, the computer doesn't take into account the reasons behind

7    those technical violations.  They don't -- it doesn't go any

8    further than there is some technical violations.

9           So I submit to the Court that, again, there are, I

10   believe, combinations of conditions that will mitigate any

11   flight risk here.

12          THE COURT:  Ms. Leon, just a couple of questions.  So

13   Mr. Estrada-Pastrana though, for the last several years, has

14   been residing with his girlfriend, correct?

15          MS. LEON:  That's correct.

16          THE COURT:  But you're proposing that if he were to be

17   released that he reside with his mother or father.

18          MS. LEON:  His mother, not his father.  They are

19   not -- his mother and father are not together.  So they do live

20   separately.

21          His mother, I have spoken to her.  She is very willing

22   to take her son in, even if he is on an ankle monitor or

23   something of the sorts.  And it is my understanding from the

24   pretrial report that she doesn't have a criminal history.

25          Oh, there is one notation for driving on a suspended

1   license.  Disposition unknown.

2          And she does have protected status here in the United

3   States.

4          THE COURT:  And why are you not proposing the

5   girlfriend?

6          MS. LEON:  At -- quite frankly, your Honor, to be

7   honest, I was in court all day yesterday and didn't have time

8   to speak to the girlfriend.  And I noticed she was not -- she

9   was not interviewed, I don't think, by pretrial services.  So I

10  think it is best to pick somebody who was interviewed by

11  pretrial services and that I have spoken to myself.  That is

12  the reason.

13         THE COURT:  And is -- is Ms. Pastrana in the courtroom

14  today?

15         MS. LEON:  She is, your Honor.

16         THE COURT:  Does she speak English?

17         MS. LEON:  She -- broken English.  But she understands

18  it very well.  A little trouble with certain words saying it

19  herself, yes.

20         THE COURT:  Is Ms. Pastrana willing to come to the

21  podium and answer some questions?

22         MS. LEON:  Yes, your Honor.

23         THE COURT:  Ms. Pastrana, could I ask you to come up

24  to the front of the courtroom, please?

25         MS. LEON:  Would your Honor like me to stand with her?

1  THE COURT:  You're welcome to.

2  MS. LEON:  Okay.

3  THE COURT:  That's fine.

4  MS. LEON:  She's a little nervous.

5  THE COURT:  Either.  Just so you're both speaking into

6  a microphone, please.

7  Hi, Ms. Pastrana.  Good morning.

8  MS. PASTRANA:  Good morning.

9  THE COURT:  I'm Heather McShain.  I'm the Judge who

10  is -- I know you have been in the courtroom this whole time --

11  who is tasked with making this decision on the government's

12  detention motion.  And as you heard it discussed today on the

13  record, you have been proposed as a third-party custodian for

14  your son.

15  In your own words, what do you understand serving as a

16  third-party custodian to mean?

17  MS. PASTRANA:  Custodian for me to mean is he can stay

18  at my house and I can check everything what's going on with him

19  and like take -- he can stay at my house.  Like, you know, if I

20  like let him come home, he about to live with me.  Because it

21  is only one son I have.  That's the only one.

22  THE COURT:  He's your only son?

23  Do you understand that this role of third-party

24  custodian, it is not only to provide a place for your son to

25  live, but also to report him to the Court or to pretrial

1    services if he were to violate any of his bond conditions?  Do

2    you understand that would also be part of your role?

3               MS. PASTRANA:  Yes.

4               THE COURT:  And you -- you would report your son if

5    he, for example, didn't return to the home when he was required

6    to or violated any other condition?

7               MS. PASTRANA:  Yes.

8               THE COURT:  And you understand that if you did that,

9    it could result in more significant consequences or penalties

10   for your son?

11              MS. PASTRANA:  Yes.

12              THE COURT:  Takes a lot of fortitude to make a call

13   like that on your child.  You would be willing to do that?

14              MS. PASTRANA:  I would do that, of course.

15              THE COURT:  Okay.  Does the government have any

16   questions you would like me to pose to Ms. Pastrana?

17              MS. RATTAN:  No, your Honor.

18              THE COURT:  Okay.  Thank you.

19              Thank you, Ms. Pastrana, for taking the podium.  I

20   appreciate it.

21              Ms. Leon, did you have any other points you wanted to

22   make?

23              MS. LEON:  Nothing further, your Honor.  Thank you.

24              THE COURT:  Thank you.

25              Back to you, government counsel.  I'm happy to hear

1    additional argument, respond to any of those points.

2        MS. RATTAN: Yes, your Honor. Just to clarify that

3    under 3142(e)(1) the standard or the question is if there is a

4    combination of conditions that will reasonably assure the

5    appearance of the person. Slightly different than the serious

6    risk of flight that's mentioned in Subsection (f)(2)(A).

7        That being said, my understanding is that the

8    defendant is proposing his mother with -- and living with his

9    mother as a third-party custodian in this case as an option

10    that would provide supervision.

11        My concern is based on his criminal history, which

12    starts at the age of 16 and looking through 17 years old when

13    he was a minor, presumably, living with parents or some sort of

14    guardian, there were a number of criminal violations that

15    occurred at this stage in his life that included a violation of

16    bail bond conditions, as well as the bond forfeiture warrant

17    issuing in the 2006 case and a violation -- a finding of

18    violation of the conditional sentence.

19        So, once again, based on that history and the history

20    indicating that he has violated bond conditions subsequently as

21    an adult and was currently on supervised -- or supervision in a

22    state case, my concern here is that there are not -- there is

23    not a combination of conditions that would reasonably assure

24    his appearance for further proceedings.

25        THE COURT: Thank you.

1    So I'm going to put my findings on the record right

2  now in ruling on the government's motion.  I just want to

3  confirm.  I know that this is the pretrial services report and

4  government counsel referenced pretrial services's

5  recommendation.

6    But, Ms. Minarik, just so the record is clear, it

7  continues to be pretrial services's recommendation that

8  Mr. Estrada-Pastrana be detained according to that assessment

9  of nonappearance and also you have an assessment of danger as

10  well.  I realize that the government is only moving under risk

11  of nonappearance.  But pretrial services's recommendation is

12  detention, correct?

13    MS. MINARIK:  That is correct, your Honor.

14    THE COURT:  Okay.  And also just to confirm on the

15  record, is there an ICE detainer in place?

16    MS. RATTAN:  Yes, there is an ICE detainer in place.

17    MS. LEON:  If I may, your Honor.

18    THE COURT:  Yes.

19    MS. LEON:  Just that the fact that there is

20  immigration removal proceedings or an ICE detainer in place

21  does not qualify as flight or serious -- or a risk of

22  nonappearance because, again, the volition element.  So I don't

23  think that's a basis to deny Mr. Estrada-Pastrana bond.

24    THE COURT:  Anything else you want to say in response

25  to that?

1           MS. RATTAN: The government is not arguing that.

2           THE COURT: Right. I just wanted to confirm on the

3 record if there was one in place.

4           MS. RATTAN: Sure. Yes.

5           THE COURT: So thank you.

6           So we're here on the government's motion. Sorry.

7 We're here on the government's motion to detain defendant Jefry

8 Estrada-Pastrana. And the government sought a detention

9 hearing, and the Court found that the government was entitled

10 to a detention hearing pursuant to 18 United States Code,

11 Section 3142(f)(2)(A) on a serious risk of flight.

12           The government seeks to detain Mr. Estrada-Pastrana

13 based only on that serious risk of nonappearance. And in its

14 report of January 28, 2025, pretrial services recommends

15 detention. And Ms. Minarik confirms that remains pretrial

16 services's recommendation today on the record.

17           This Court, having reviewed and considered the

18 evidence presented to include the pretrial services's report

19 and recommendation, having heard argument from both parties on

20 this matter at this detention hearing today, the Court makes

21 the following findings of fact and conclusions of law: So the

22 defendant has been charged by criminal complaint here with

23 illegal reentry in violation of Title 18, United States Code,

24 Section 1326(a).

25           And considering the government's motion for detention,

1    the Court's guided by several principles.  At all times the

2    defendant is entitled to the presumption of innocence.  So

3    nothing that the Court sets forth in its findings today is

4    intended or should be considered to affect that presumption.

5         The purpose of this hearing is to determine whether

6    notwithstanding that presumption of innocence the defendant

7    should be detained or released pending trial.

8         Under the Bail Reform Act, a defendant must be

9    released prior to trial unless the Court finds that there is no

10   condition or combination of conditions that will reasonably

11   assure the appearance of the defendant as required.

12        I'm not going to address sort of standards or language

13   in the Bail Reform Act regarding safety to the community given

14   that the government is only moving here under risk of flight.

15        So, again, under the Bail Reform Act, the -- a

16   defendant must be released prior to trial unless the Court

17   finds that no condition or combination of conditions that

18   exists will reasonably assure the appearance of the defendant

19   as required.

20        The act requires the least restrictive conditions be

21   imposed that are necessary to provide the reasonable

22   assurances.  If the Court cannot find any condition or

23   conditions that will reasonably assure the appearance of the

24   defendant as required, then the Court is required by the Bail

25   Reform Act to order the defendant held in custody.

1    With respect to the burden of proof here, the facts

2    supporting a finding that no condition or combination of

3    conditions could reasonably assure the appearance of the

4    defendant as required, must be established by a preponderance

5    of the evidence.

6    The Court in making its determination must analyze and

7    consider the 3142(g) factors that the Bail Reform Act requires.

8    And those are the nature and circumstances of the alleged

9    offense, the weight of the evidence against the defendant.

10   Although this Court acknowledges that under Seventh Circuit

11   case law this factor carries the least weight.

12   The history and characteristics of the defendant,

13   which include defendant's physical and mental condition, family

14   ties, employment, length of residency in the community,

15   criminal record or lack thereof, history of drug or alcohol

16   abuse, record of appearance at prior court proceedings whether

17   the defendant was on a conditioned release of some sort at the

18   time of the new alleged offense, and then the fourth factor is

19   the nature and seriousness of the danger to any person or the

20   community.

21   The Court has considered the evidence that's been

22   presented on these factors during this hearing today by both

23   sides, and I have also considered, again, the pretrial services

24   report as well as pretrial services's recommendation.

25   Based on the specific facts in this case and specific

1  consideration of this defendant, the Court finds that the

2  government has not met its burden with respect to a risk of

3  flight here and that there are conditions or combination of

4  conditions that are available to mitigate this risk of

5  nonappearance.

6          Let me just put my findings on the record, and then

7  I'm going to talk about this combination of conditions that the

8  Court intends to impose.

9          So the alleged offense here is illegal reentry.  This

10  is not a violent offense.  It is serious in that -- based on

11  the information in front of this Court to include this

12  affidavit in support of a criminal complaint, that after seven

13  prior removal proceedings, the defendant on six other occasions

14  has reentered.

15          It is a serious offense, but it is in the spectrum of

16  things -- and I'm going to address this when I talk about the

17  factors here, the conditions of release here, that can assure

18  or mitigate the risk of nonappearance.  Those are going to sort

19  of move the needle as far as, you know, the seriousness of this

20  offense, the fact that it is continuing.  And also I agree with

21  the assessment that the evidence is strong here with respect to

22  the identification of the defendant and with respect to his

23  ties to these -- you know, to the A-File and to the six prior

24  reentries into this country.

25          Looking at the history and characteristics of this

35-year-old defendant, many of these support release here. The defendant in the pretrial services report talks about that he is suffering a physical condition, just experiencing some ongoing chronic pain, and also does talk about some mental health background. But that is something that can be addressed while he's on release. Obviously it could be addressed in custody as well. But it is just not driving the decision here, and I just find it neutral with respect to this Court's decision.

With respect to family ties and time in the Northern District of Illinois or ties to this community, these obviously weigh in favor of release here. This is someone who came to this country at 11 or 12 years old, has two parents, five siblings, four children, and a girlfriend all in Northern District of Illinois.

Every time that he has been removed, he has come back to this area. It is just a point that is hard to argue against with respect to he keeps coming back here because this is where his entire sort of family nucleus is. So those factors or consideration of those characteristics of this defendant weigh in favor of release.

Employment also weighs in favor of release. This is someone who has had consistent employment for several years, who has been earning an income, supporting his family, his children. That weighs in support of release.

1    History of drug or alcohol abuse, the pretrial

2 services report does mention social drinking, daily use of

3 marijuana.  This can be addressed on bond as well.  Obviously I

4 will impose conditions that he's not to use illegal substances,

5 which will include marijuana, and also to limit the drinking.

6 He'll also be subject to random drug testing.  So this can be

7 addressed on bond and it is not a reason and does not weigh in

8 favor of detention.

9    Record of appearance at prior court appearances,

10 criminal record, and whether a defendant was on some sort of

11 conditioned release at the time of the new alleged offense.

12 Again, this is a 35-year-old defendant.  I credit the

13 government's recitation here with respect to this criminal

14 history.  And as it is outlined in the pretrial services

15 report, there are bond forfeitures here.  There is also felony

16 conviction of robbery back in 2010.  There is also the felony

17 aggravated fleeing back in 2014.

18    Those are obviously serious crimes.  And the fleeing

19 goes to, and the government correctly credibly, you know,

20 pointed to that conviction with respect to or in support of its

21 motion to detain.  But that is a dated conviction.

22    And what speaks or what resonates with this Court or

23 is weighing heavily on this Court's determination today or

24 ruling today is when you look at this criminal history he does

25 have -- Mr. Estrada-Pastrana does have these two recent Cook

1  County cases.  Granted he picked up these two cases, not

2  convicted in these, but picked up these charges, you know,

3  while he's here illegally.  But the fact is that he -- there is

4  nothing in the pretrial services report -- and I confirmed this

5  with Ms. Minarik on the record today -- with respect to the

6  felony charges in the 2023 case out of Cook County.

7  Mr. Estrada-Pastrana has been appearing.  There is nothing in

8  his criminal history recently where he has not been appearing

9  for court and where there was this petition for revocation that

10  was denied on November 7, 2024.

11          And, again, there is no indication that he's not been

12  appearing in court, has not been satisfying his bond conditions

13  in that felony case, with the exception of this misdemeanor --

14  these misdemeanor vehicle charges that were nolle'd that came

15  up in 2024 and that I think led to, at least how this Court is

16  reading this, led to this revocation -- the petition for

17  revocation filed a couple of days after that arrest.

18          As a result of that criminal history, while again he's

19  picking up these convictions while he's here illegally, and the

20  Court acknowledges that, again it just doesn't outweigh or the

21  Court is satisfied, again, that there are conditions of release

22  that can be fashioned here that will assure this defendant's

23  appearance at future court proceedings.

24          And the conditions I intend to impose -- and I'll

25  address these holistically after I just get them on the record.

1          And if I could ask government or defense, do either of

2     you have a -- okay.  If you could just follow along and then

3     I'll also give each of you an opportunity to respond to these.

4          I'm going to place the defendant into the custody of

5     his mom who will serve as a third-party custodian.  As

6     difficult as it is for any parent to potentially report on

7     their child if they violate a bond condition, I was able to

8     look Ms. Pastrana in the eye.  She answered my questions.  And

9     I know that she wants to support her son and keep him -- you

10    know, keep him in line here so that he doesn't get into further

11    trouble with respect to law enforcement and with respect to his

12    current case.

13         So he's going to be placed in the custody of his mom.

14    He's going to reside with his mom, and she will serve as third-

15    party custodian.

16         The defendant will also be ordered to submit to

17    supervision.

18         He is to surrender any passports.  To the extent there

19    is a passport, he's to surrender that within two business days

20    to pretrial services.  He's not to obtain a passport or other

21    international document.

22         His travel is going to be restricted to the Northern

23    District of Illinois.  He is to get -- this is 7H.  Wait.

24    Sorry.  I think I have the wrong paragraph.

25         So 7H is get medical or psychiatric treatment.  I'm

1    just going to -- I'm checking that paragraph, but it is going

2    to be at pretrial services's direction.  So I'll leave it to

3    pretrial services to determine whether or not that's going to

4    be appropriate given what was reported in the pretrial services

5    report.

6             He is not to possess a firearm, destructive device, or

7    other weapon.

8             He is not to use alcohol at all.  That's paragraph L.

9             Paragraph M, not use or unlawfully possess a narcotic

10   drug or other controlled substance.  He's to submit to testing

11   for a prohibited substance.

12            He is to participate in a program of inpatient or

13   outpatient substance use treatment if it is directed by

14   pretrial services.

15            And I'm going to place him on location monitoring.

16   But I want to make sure that he is able to continue to work.

17   So I'm putting him on the least restrictive location

18   monitoring, and that's home detention.

19            So he's restricted to his residence except for

20   employment, education, religious services, medical substance

21   use or mental health treatment, attorney visits, court

22   appearances, court-ordered obligations, activities approved by

23   the Court or essential activities approved in advance by the

24   pretrial services office or supervising officer.

25            He's also to report as soon as possible -- this is

1    paragraph 7R -- any contact with law enforcement.

2         And paragraph S will be that pretrial services has two

3    business days to install the location monitoring equipment.

4         I realize the government sought to detain here and

5    that pretrial services recommended it.  But, again, given

6    this -- given this entire sort of holistic view here, the

7    location monitoring, the fact that there will be a third-party

8    custodian in place, and that pretrial services will be also

9    supervising this defendant who, again, has his entire family

10   here in this district and who has employment in this district,

11   the Court believes that these conditions will address any

12   concerns, mitigate the risk of nonappearance, and are suitable

13   under the Bail Reform Act and in line with the Bail Reform Act

14   with respect to the least restrictive conditions must be

15   imposed.

16        Again acknowledging government move to detain.  Are

17   there any conditions that the government would seek despite its

18   objection to this release order?

19        MS. RATTAN:  No, your Honor.

20        THE COURT:  Ms. Leon, do you have any objection to any

21   of those proposed conditions by the Court?

22        MS. LEON:  No objection, your Honor.

23        THE COURT:  Okay.  Pretrial services, again I know

24   your recommendation was to detain.  But from pretrial

25   services's standpoint, are there any conditions that pretrial

1    services would ask the Court to consider or any concerns with
2    those that the Court has imposed?
3              MS. MINARIK:  No, your Honor.
4              THE COURT:  Okay.  Thank you, Ms. Minarik.
5              What I would like to do is take a brief recess to
6    allow this order setting conditions of release -- I'm also
7    going to impose an appearance bond unsecured in the amount of
8    4500.
9              If you could complete that paperwork.  And then,
10   Ms. Leon, I would like you to explain it to both Ms. Pastrana,
11   as well as Mr. Estrada-Pastrana, and then I'll come back on the
12   record to admonish.
13             MS. LEON:  Sure, your Honor.
14             THE COURT:  Thank you, Ms. Leon.
15             MS. RATTAN:  Your Honor, just could you repeat the
16   bond?
17             THE COURT:  4500 unsecured.
18             MS. RATTAN:  45?
19             THE COURT:  Sorry, 4500 --
20             MS. RATTAN:  Okay.
21             THE COURT:  -- unsecured OR bond.  I'm sorry if I just
22   misstated that again.
23             MS. RATTAN:  Thank you, your Honor.
24             THE COURT:  Of course.  We'll take a brief recess.
25   And just let my courtroom deputy know when you're ready.

1    Ms. Leon, could you also review the penalties and

2    sanctions --

3    MS. LEON:  Yes.

4    THE COURT:  -- if any of these bond conditions are

5    violated?  Thank you.

6    MS. LEON:  Yes, your Honor.

7    (Brief recess.)

8    THE COURT:  We're back on the record.  And I have in

9    front of me the order setting conditions of release as well as

10   the appearance bond.

11   Mr. Estrada-Pastrana and Ms. Pastrana, I need you to

12   listen as I review on the record now each of these conditions

13   of release.  And I'm going to ask each of you a series of

14   questions after I'm done putting these on the record.  Okay?

15   So on release, Mr. Estrada-Pastrana, you need to abide

16   by the following conditions of your release as follows:  First,

17   you must not violate federal, state, or local law while you're

18   on release.

19   You must cooperate in the collection of a DNA sample

20   if it is required by statute.

21   You must advise the Court or pretrial services in

22   writing before making any change to your residence or telephone

23   number.

24   You must appear in court as required.  And if you are

25   convicted, you must surrender -- you must surrender as directed

1    to serve any sentence that the Court may impose.

2          I have also ordered you to sign an appearance bond,

3    which you have, in the unsecured amount of $4500.  And I have

4    that in front of me.

5          You're going to be placed into the custody of your mom

6    who is going to serve as a third-party custodian.  You also,

7    while you're on release, must submit to supervision by pretrial

8    services.  And you're going to need to check in with your

9    pretrial services officer no later than two business days from

10   today.

11         You must surrender any passport to pretrial services

12   within two business days.  You must not obtain a passport or

13   other international travel document while you're on release.

14         Your travel, while you're on bond, is restricted to

15   the Northern District of Illinois.  If you have any concerns

16   about a location and whether or not it is going to fall within

17   or with outside of the district, talk to your pretrial service

18   officer or talk to Ms. Leon.

19         You must get medical or psychiatric treatment if

20   recommended by pretrial services.

21         On release you must not possess a firearm, destructive

22   device, or other weapon.

23         You must not use alcohol at all.  You must not use or

24   unlawfully possess a narcotic drug or other controlled

25   substance unless it is prescribed by a licensed medical

1    practitioner.  This includes marijuana.

2            You must submit to testing for a prohibited substance

3    if it is required by pretrial services.  That testing may be

4    random in frequency.  And you must not obstruct, attempt to

5    obstruct, or tamper with the efficiency and accuracy of the

6    substance screening or testing for prohibited substances.

7            On release, you must participate in a program of

8    inpatient or outpatient substance use treatment if it is

9    directed by the pretrial services officer or office.

10            You're to participate in location monitoring program,

11   specifically home detention.  Meaning that you're going to be

12   restricted to your mom's residence at all times with the

13   following exceptions:  Employment, education, religious

14   services, medical, substance use, or mental health treatment,

15   attorney visits, court appearances, court-ordered obligations,

16   activities approved by the Court, or essential activities

17   approved in advance by the pretrial services office or

18   supervising officer.

19            You must report as soon as possible to pretrial

20   services every contact that you have with law enforcement.

21   That includes arrest, questioning, or traffic stops.

22            And finally, the location information monitoring

23   information -- or the equipment for the location home

24   monitoring, pretrial services will install that within two

25   business days.

1    So those are all of the conditions of release that the

2    Court is ordering for Mr. Estrada-Pastrana.

3    I want to talk now about the penalties or the

4    sanctions that could follow if you violate any of these

5    conditions of release.  So if you violate any one of those

6    conditions, that could result in the immediate issuance of a

7    warrant for your arrest, a revocation of your release, meaning

8    you're taken back into custody.  An order of detention, meaning

9    you remain in federal custody.

10    A forfeiture of any of bond.  Meaning the government

11    can seek a judgment in the amount of $4500 against you.

12    And a prosecution for contempt of court, and that

13    could result in imprisonment, a fine, or both.

14    In addition, if you commit another federal felony

15    offense while you are on bond, that could not only result in an

16    additional case and, if convicted, additional, you know,

17    sentence imposed, but that's also going to -- could result in

18    additional time, like a more enhanced sentence if you are

19    convicted in your pending case right now.

20    Finally, how you perform on bond is something that if

21    you're convicted in this case that the sentencing judge will

22    take account of at the time of sentencing.

23    So if you don't violate any conditions, if you're

24    totally fine on bond, you're going to give Ms. Leon, your

25    attorney, facts to argue in mitigation or in support of a lower

1   sentence.

2          If you violate bond, if you are back in court because

3   you're not following these conditions of your release, you're

4   going to give government counsel additional facts to argue in

5   aggravation or in support of a higher sentence.

6          So there is a lot at stake here with respect to how

7   you conduct yourself, how you perform on bond.

8          So I'm going ask Mr. Estrada-Pastrana some questions

9   now.  Did you hear me just state on the record each of those

10  conditions of your release?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Do you understand each of those

13  conditions?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Any questions about them?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  And did you have sufficient time to talk

18  to Ms. Leon about those conditions?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  And you heard me state on the record the

21  possible sanctions or penalties that could follow if you

22  violate any of these conditions of your release?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  And Ms. Leon reviewed those with you as

25  well, correct?

1          THE DEFENDANT:  Correct.

2          THE COURT:  Okay.  Ms. Pastrana, could I have you come

3    back to the podium, please.

4          How are you, Ms. Pastrana?

5          MS. PASTRANA:  Hi.

6          THE COURT:  You heard me state on the record each of

7    the conditions of release that the Court is imposing that your

8    son must follow while he's on release.  Did you hear each of

9    them?

10         MS. PASTRANA:  Yes.

11         THE COURT:  Do you have any questions about them?

12         THE DEFENDANT:  No.

13         THE COURT:  Do you --

14         MS. PASTRANA:  My son is a good man so he understand

15   what's going on.

16         THE COURT:  Okay.  But it is important that you

17   understand what's going on as well.

18         MS. PASTRANA:  Yes.

19         THE COURT:  So do you understand each of those

20   conditions?

21         MS. PASTRANA:  Yes.

22         THE COURT:  Okay.  And do you understand that you're

23   taking on this role of third-party custodian, meaning you're

24   not only going to house your son, but if he violates any of

25   those conditions, if he is drinking, if he is using marijuana,

1    if he is not in the house when he's supposed to, you're going

2    to call pretrial services or you're going to call the Court,

3    correct?

4              MS. PASTRANA:  Correct.

5              THE COURT:  And you're going to abide by that

6    responsibility?

7              MS. PASTRANA:  Yes.

8              THE COURT:  And you're doing this of your own free

9    will?

10             MS. PASTRANA:  Yes.

11             THE COURT:  No one is forcing you to take on this role

12   of third-party custodian?

13             MS. PASTRANA:  No.

14             THE COURT:  And you understand each of the conditions?

15             MS. PASTRANA:  Yes.

16             THE COURT:  Okay.  Thank you so much.  I appreciate

17   it.

18             MS. PASTRANA:  Thank you.

19             THE COURT:  With that, I will enter this order setting

20   conditions of release and the appearance bond.  My order will

21   also just state that -- and I -- again, I'm fully aware that

22   there is an ICE detainer in place here.  But it is the

23   expectation of the Court that Mr. Estrada-Pastrana will be

24   released upon processing in the ordinary course and that

25   nothing is going to delay that processing in release with --

1    the existence of the ICE detainer will not -- will not impede

2    his processing and release in the ordinary course.

3          The only other issue that I needed to take up was

4    appointment.  And I appreciate that Ms. Leon did file an under-

5    seal supplement that I did have a chance to review.  And based

6    on that additional information that Ms. Leon was able to

7    clarify, I do find that Mr. Estrada-Pastrana does -- does

8    qualify for appointment of counsel.  And so I -- my intention

9    is to enter an order as well appointing Ms. Leon to serve as

10   counsel going forward.

11         MS. LEON:  Thank you, your Honor.

12         THE COURT:  Yeah.  Is there anything else that needs

13   to be taken up at this time?

14         From the government.

15         MS. RATTAN:  Not from the government.

16         THE COURT:  Thank you so much.

17         From the defense.

18         MS. LEON:  I have been informed that this is probably

19   not going to happen, Judge, but I did promise a child that I

20   would ask.  My client, upon release from the MCC, based on what

21   occurred yesterday with my other client, will be detained by

22   ICE and his family will not be able to say goodbye at that

23   point.  So I'm asking the Court to allow them to hug him

24   goodbye now.

25         THE COURT:  I'm sorry, I -- as sympathetic as I am to

1  the situation, it is against the marshal service policy.  And

2  for the safety of everyone in this courtroom, I can't permit it

3  as sympathetic as I am to the situation.  So I -- I can't.

4          MS. LEON:  I already knew the answer, but I had to

5  ask.

6          THE COURT:  I understand, Ms. Leon.

7          Anything further, Ms. Leon?

8          MS. LEON:  Nothing further.

9          THE COURT:  Ms. Minarik, anything further from

10  pretrial services?

11          MS. MINARIK:  No.

12          THE COURT:  Thank you so much, everyone, for your

13  time.  Thanks to the marshal service in the courtroom today.  I

14  know this was a long one so thank you so much.

15          We're adjourned.

16      (Which concluded the proceedings.)

17                          CERTIFICATE

18          I certify that the foregoing is a correct transcript

19  from the digital recording of proceedings in the above-entitled

20  matter to the best of my ability, given the limitation of using

21  a digital-recording system.

22

23  */s/Pamela S. Warren*                February 18, 2025
    Official Court Reporter - Retired          Date
24  United States District Court
    Northern District of Illinois
25  Eastern Division

## CERTIFICATE OF SERVICE

The undersigned, <u>Kathleen Leon</u>, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**SUPPLEMENT TO MOTION TO MODIFY CONDITION 7(q)(i)(2) OF THE CONDITIONS OF PRETRIAL RELEASE, TO ADD A 3RD PARTY CUSTODIAN, AND CHANGE HOME ADDRESS**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>February 19, 2025</u>, to counsel/parties that are non-ECF filers.

By:     */s/ Kathleen Leon*
KATHLEEN LEON
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, Illinois 60603
(312) 621-8341